Clarence L. **SHINABARGER**

v.

**A. M. JATOI.**

No. CIV73–5052.

United States District Court,
D. South Dakota.

Nov. 21, 1974.

Jon Mattson, Deadwood, S. D., for plaintiff.

William G. Porter, Rapid City, S. D., for defendant.

## MEMORANDUM OPINION

BOGUE, District Judge.

The above matter has come before this Court pursuant to defendant's motion to dismiss the plaintiff's complaint for failure to state a claim upon which relief can be granted. A hearing was held on this question on August 19, 1974. During the hearing held on the motion both parties agreed that the motion to dismiss should be handled as a motion for summary judgment. Since it is necessary for the Court to consider the deposition of the plaintiff in deciding the motion, the motion will be treated as one for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The plaintiff in his complaint alleges two causes of action. The first cause of action basically alleges that the defendant was negligent in two separate surgical procedures performed upon the plaintiff. The plaintiff in his second cause of action alleges that the defendant was negligent in failing to properly diagnose plaintiff's condition, specifically that he failed to remove certain infected and abscessed sutures present in the plaintiff's body as a result of the prior surgical procedures.

In his deposition, plaintiff testified that he was operated on by Dr. Jatoi in July of 1969. Approximately a month after the first operation, Dr. Jatoi again operated upon the plaintiff for the same problem he was having with his stomach. The plaintiff further testified that after being discharged from the hospital subsequent to the second operation he continued seeing Dr. Jatoi quite frequently for a cough that had developed after the operation. Plaintiff testified that he had to receive treatment from the defendant on several occasions following the second surgery in the fall of 1969 because the sutures from the operation would "pop out" of his skin and become visible. Dr. Jatoi would clip the sutures with his forceps, and then apply alcohol to the area and cover it with a bandage. Plaintiff further testified, that Dr. Jatoi during this treatment stated that "it would be all right and said it would take time for that to work out of the system." To the best of his recollection, plaintiff testified that he continued under the treatment of Dr. Jatoi until November or December of 1970 with regards to the problem that he was having with the sutures.

Plaintiff further testified in his deposition, that in the fall of 1970 he made approximately three or four visits to a Dr. Kryger, a Deadwood physician who treated him with regard to the problem that he was having with the sutures. During this period of time, plaintiff testified, that Dr. Kryger informed him that he would need further medical attention and advised him that he should go to Fort Meade, since the plaintiff was a veteran. Plaintiff further testified, that he went to Fort Meade in June of 1971 whereupon he was operated upon by a Dr. Ragu and Dr. Perry who removed the infected sutures that are the subject of this lawsuit. The plaintiff had two subsequent operations while at the V. A. Hospital at Fort Meade, and was finally discharged in January of 1972.

The defendant bases his motion to dismiss for failure to state a claim upon which relief can be granted upon the contention that the plaintiff commenced the present action outside of the two-year statute of limitations as prescribed by S.D.C.L. § 15–2–15(3). Since the acts complained of took place in South Dakota, the law of that forum must be applied in determining whether the plaintiff's suit was timely commenced. Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The statute of limitations in question, S.D.C.L. § 15–2–15 (1967), provides that an action against a physician must be commenced within two years after the cause of action shall have *accrued,* unless a different limitation is prescribed by statute. (Emphasis added.) The question that must be decided here is whether the plaintiff's cause of action as alleged accrued within the two-year statute of limitations, or whether the plaintiff has alleged an exception to the statute of limitations which would toll its commencement.

This Court has discovered only one South Dakota Supreme Court decision that deals with the statute of limitations in a medical malpractice action. In the case of Hinkle v. Hargens, 76 S.D. 520, 81 N.W.2d 888 (1957), the South Dakota Supreme Court held that fraudulent concealment of a cause of action was an implied exception to the statute of limitations and thereby tolled its commencement. In that case, the plaintiff alleged that the defendant surgeon left a portion of a surgical needle em-

bedded in the plaintiff's back following an operation; the defendant negligently failed to remove the needle fragment and fraudulently concealed such fact; and although the plaintiff consulted numerous doctors the needle was not discovered and removed until approximately eleven years after the initial operation. The obvious variance in the present facts is that the plaintiff here has not alleged in his complaint that the defendant fraudulently concealed the fact that the malpractice had been committed upon him.

In the *Hinkle* case the South Dakota Supreme Court stated what it considered to be the majority view that fraudulent concealment of a cause of action *tolls* the statute of limitations until the cause of action is discovered or might have been discovered by the exercise of diligence. 76 S.D. 520, 81 N.W.2d at 890. Since the present case does not allege that the defendant fraudulently concealed the discovery of the plaintiff's cause of action, it must first be determined whether the South Dakota Supreme Court would recognize the plaintiff's allegation as also being an implied exception to the applicable statute of limitations, which would therefore toll its commencement. Thus, this Court is placed in the position of determining what the South Dakota Supreme Court would hold were the facts of the present case presented to it.

The South Dakota Supreme Court in the *Hinkle* case, stated that "Courts are reluctant to allow implied exceptions to the statute of limitations." They went on to state that fraud, however, is repugnant wherever encountered and its use as a defense to the statute of limitations should not be ignored by the Court. 81 N.W.2d at 890. In many of the earlier cases the courts quite freely implied exceptions to the limitation statutes, however in the more modern cases the courts have been unwilling to add implied exceptions which the legislature has not seen fit to make regardless of the inequities presented. *See,* Bull v. U. S., 295 U.S. 247, 55 S.Ct.

695, 79 L.Ed. 1421 (1934). Most courts, however, recognize the implied exception that fraudulent concealment will toll the statute of limitations. *See,* Annot. 80 A.L.R.2d 368 (1961). In light of this rule of construction it would therefore appear that the South Dakota Supreme Court would be very reluctant to create any new implied exceptions to the statute of limitations in question, in fact, as pointed out by the dissenting opinion authored by Judge Rentto, the majority of the *Hinkle* court had gone against one of its prior decisions in creating an implied exception to the statute of limitations. *See* Kirby v. Madden, 66 S.D. 397, 284 N.W. 54 (1939).

Since this Court has found that the *Hinkle* case is controlling as to the question as to whether the statute of limitations was tolled, it is now necessary to determine when the cause of action accrued under the law of the forum, South Dakota. This Court, through its research, has been unable to find, nor has it been cited to by either of the parties, a reported South Dakota case which defines when a cause of action *accrues* in a medical malpractice case. This Court again, therefore, is placed in a position of determining what the South Dakota Supreme Court would hold were it presented with the facts of the present case.

The Hinkle v. Hargens case, supra, is of little assistance in this area, since the South Dakota Supreme Court went directly to the question of whether or not fraudulent concealment is an exception to the statute of limitation which therefore tolls the limitation period. 76 S.D. 520, 81 N.W.2d at 890.

In trying to define the meaning of the term "accrued" it may be helpful to ascertain the underlying policies and objectives of a statute of limitation. Probably the most obvious reason for the enactment of statutes of limitation is that they prevent undue delay in bringing a lawsuit, and hopefully suppress fraudulent and stale claims from being asserted after the evidence of the facts have become obscure from a

great lapse of time. There is no question that statutes of limitation are arbitrary in the fixing of the period of time in which a right may be asserted. As far as the South Dakota limitation on the instigation of malpractice actions is concerned the legislature and the courts are confronted with two conflicting policies, the policy of protecting the physician or surgeon against the instigation of stale or fraudulent lawsuits, and on the other hand, the policy of protecting patients against the negligence of medical practitioners, which often is incapable of being discovered within the statutory period of limitation.

In dealing with the statute of limitations in malpractice cases the courts have taken a variety of views as to when the patient's cause of action accrues. The only generalization that can be drawn from these authorities is that almost every jurisdiction recognizes that a cause of action for malpractice accrues later than the date of the defendant's wrongful act, where the plaintiff is unable to discover through the use of reasonable diligence the negligence that was practiced upon him. *See,* Annot. 80 A.L.R.2d 368 (1961).

■ In the last ten or fifteen years the trend of the law has been to adopt the view designated as the "discovery rule". Simply stated, the discovery rule is: the limitation statute in malpractice cases does not start to run (the cause of action does not accrue) until the date of discovery, or the date when, by the exercise of reasonable care and diligence, the plaintiff should have discovered the wrongful act. *See,* Flynn v. Lucas County Memorial Hosp., Iowa, 203 N.W.2d 613 (1973); Flanagan v. Mount Eden General Hosp., 24 N.Y.2d 427, 301 N.Y.S.2d 23, 248 N.E.2d 871 (1969); Acker v. Sorensen, 183 Neb. 866, 165 N.W.2d 74 (1969); Frohs v. Greene, 253 Or. 1, 452 P.2d 564 (1969); Wilkinson v. Harrington, 104 R.I. 224, 243 A.2d 745 (1968); Iverson v. Lancaster, N.D., 158 N.W.2d 507 (1968); Johnson v. Caldwell, 371 Mich. 368, 123 N.W.2d 785 (1963); Ayers v. Morgan, 397 Pa. 282, 154 A.2d 788 (1959).

Those courts who have adopted the "discovery rule" base their holdings upon a variety of reasons, the most important of which would seem to be that statutes of limitation are enacted upon the presumption that one having a well-founded claim should not be allowed to enforce his cause of action beyond a reasonable time if he has a right to proceed on that claim. The basis of the presumption that the plaintiff will not delay in the commencement of his claim vanishes whenever the ability to resort to the courts is taken away. Thus, if an injured party is wholly unaware of the negligence that is the cause of his malady, it is difficult to envision how he may be accused of having been dilatory in the prosecution of his suit. This conclusion is further buttressed by the policy that patients should have confidence in their physicians. As stated in the case of Spath v. Morrow, 174 Neb. 38, 115 N.W.2d 581 (1962):

. . . the physician should have a reasonable opportunity to correct the mistakes incident to even skilled surgery; and that the physician should not be harassed by premature litigation instituted in order to save the rights of the patient. Patients should not be encouraged to go from physician to physician in an effort to ascertain whether the diagnosis made and the treatment received are proper. Silence on the part of the physician for the statutory period should not destroy the rights of the patient. *Id.* at 584.

The above quotation is particularly relevant in cases where the patient remains in the care of the physician and the physician through his silence or affirmative representation leads the patient to believe that his condition will improve. Here the patient places his trust and confidence in the physician's diagnosis, and would be warranted in believing that the treatment he will receive will be for his benefit and best

interests. In this situation, the argument that the plaintiff's cause of action accrued while he was in the continuing care of the physician and before he discovered his cause of action would be entirely untenable.

This Court is satisfied that if the South Dakota Supreme Court were to determine what the legislature intended by its use of the term "accrued" it would recognize the "discovery doctrine" as being the rule of law that should be applied in South Dakota. Thus, the issue of whether or not the plaintiff in this case discovered, or in the exercise of reasonable care and diligence should have discovered, the alleged malpractice, is a question of fact which should be resolved at the time of trial upon the merits. Because of the foregoing reasons, the defendant's motion to dismiss which was treated as a motion for summary judgment, is hereby denied.