CITIBANK (NEW YORK STATE), N. A., Plaintiff, v MARKLEY R. SUTHERS et al., Appellants, et al., Defendants, and JONATHAN D. ESTOFF, Respondent.

Fourth Department, July 6, 1979

### APPEARANCES OF COUNSEL

*Jaeckle, Fleischmann & Mugel (David J. Calverley* and *Andrew C. Spacone* of counsel), for appellants.

*Miserendino, Krull & Foley (John Krull* of counsel), for respondent.

### OPINION OF THE COURT

CARDAMONE, J. P.

Appellants on this appeal claim that Special Term abused its discretion when it refused to permit them to amend their counterclaim as of right and also denied them leave to amend the same pleading under CPLR 3025 (subds [a], [b]).

The pleading question arose from litigation instituted by Citibank (New York State), N. A. (Bank) against defendant-appellants, Markley and Melinda Suthers. It is alleged that between October, 1973 and February, 1974 the Bank advanced $85,000 to Coe-Fisher Lumber, Inc. The loan was guaranteed by the Suthers on October 26, 1973. Coe-Fisher defaulted on July 1, 1974 and later went bankrupt.

On October 25, 1977 the Bank brought suit against the Suthers to recover $26,009.67 on their guarantees. The Suthers' answer, served on December 15, 1977, included affirmative defenses against the Bank, cross claims against other parties and a counterclaim against Dean H. Jewett, an officer of the Bank, and Jonathan A. Estoff, an attorney. The substance of appellants' counterclaim was that these two individuals as agents of the Bank fraudulently induced them to guarantee the loans. The Suthers contend that in July, 1973 they were

negotiating with Coe-Fisher Lumber, Inc., to buy its real property and to lease it back to Coe-Fisher. In connection with this arrangement they were contemplating taking a mortgage loan from the Bank which was being arranged through Jewett, manager of the Bank's Main Street office in Buffalo.

In paragraph No. 29 of their counterclaim the Suthers alleged: "Jewett informed the Suthers through their accountant that the Bank would grant them the loan if Estoff handled the legal work involved in the transaction, thereby inducing the Suthers to rely on Estoff's representation of both parties." The Suthers further claim that they consented to this arrangement and on October 26, 1973 Jewett and Estoff requested them to sign documents allegedly represented to them as "unimportant papers" which were the "first step" in obtaining the mortgage loan. It is the Suthers' contention that they first became aware of the fraud in April, 1975 when the Bank informed them that they were to be held liable on the guarantees. Asserting that they received no benefit from the guarantees, they demanded $50,000 in compensatory damages and $100,000 in punitive damages in their counterclaim.

On January 9, 1978 Estoff served a reply to this counterclaim and raised the Statute of Limitations as a defense. Meanwhile, upon request, the Suthers had granted plaintiff Bank and its employee, Jewett, until February 15, 1978 to respond to the same counterclaim. Jewett replied on that date. Nineteen days later, on March 6, 1978, the Suthers served an amended counterclaim upon Estoff. It is this amended counterclaim that the Suthers claim was made as of right under CPLR 3025 (subd [a]). Estoff returned the amended pleading as untimely served. The Suthers then moved on April 13 to obtain leave of the court to amend their counterclaim to include two additional causes of action against Estoff under CPLR 3025 (subd [b]), the first in malpractice and the second for breach of contract. In the malpractice action the Suthers allege that they engaged Estoff as their attorney and that he negligently advised them to sign the guarantees and failed to explain the character of the documents. They further allege that up to March, 1975 Estoff promised them that he would attempt to correct the difficulty which arose from their signing of the guarantees and that until April, 1975 Estoff failed to take sufficient legal steps to consummate the purchase of the real property from Coe-Fisher.

The Suthers argue that they are entitled to amend their

counterclaim as of right under CPLR 3025 (subd [a]) because it was served within 20 days after they received the last reply— although concededly it was a reply from Mr. Jewett—to their previous pleadings. Estoff urges that the Suthers' pleading could not be amended as of right since it was not served within 20 days of his (Estoff's) reply which was served on January 9. Special Term agreed with Estoff and denied appellants' 3025 (subd [a]) motion.

With respect to the 3025 (subd [b]) motion for leave from the court to amend the counterclaim, Special Term held that the matter alleged in the proposed amendment did not arise out of transactions set forth in the original counterclaim, but arose instead from an entirely new set of facts. It further held that the three-year Statute of Limitations applicable to malpractice actions had barred Suthers' claims for events that occurred on October 26, 1973, the date the Suthers signed the guarantees for the now bankrupt Coe-Fisher.

■ CPLR 3025 (subd [a]) permits a party as of right to "amend his pleading once without leave of court", provided that service, insofar as relevant to the facts here, is made "within twenty days after service of a pleading responding to it." A party may amend his pleading only once. No right exists to amend once for each opposing party. The difficulty arises in multiparty litigation. A promptly responding party does not want to be subject to an extension of time in which he did not participate and to which he did not consent. On the other hand, the pleader does not want to be forced to amend his pleading within 20 days after receipt of service of the first responsive pleading to it without an opportunity to view all responsive pleadings. The pleader who wants to amend hopes that any error, deficiency or oversight in his original pleading may be picked up all at one time in the only amendment as of right to which he is entitled.

At first blush it seems reasonable to deny plaintiff leave to amend as of right after receipt of a last response to plaintiff's pleading. It is arguably unfair to subject a promptly responding party to an extension of time, as here, in which he did not participate and to which he did not consent. Nonetheless, since at this early stage of the litigation amendments are rarely prejudicial and because a more narrow construction of CPLR 3025 (subd [a]) might well create hesitancy in granting extensions of time in multiparty litigation, we believe that the section properly intends that a pleader may respond as of

right within 20 days after service of the *last* pleading responding to his pleading (cf. *Caffaro v Trayna,* 35 NY2d 245). In our view, this construction of CPLR 3025 (subd [a]) is consistent with its literal language, i.e., "*a* pleading" translates to "*any* pleading responding to it." Absent an express provision in the statute, we conclude that it should be accorded its literal meaning in order to promote uniformity in this amendment "as of right" rule. Such construction appears to us to outweigh the possible prejudice to another party served with an amended pleading beyond 20 days from the time such party responded.

■ Leave under CPLR 3025 (subd [b]) which is to be "freely granted" was also improperly denied. It is plainly the intent of CPLR 3025 (subd [b]) to foster liberal amendment of pleadings prior to trial *(Rife v Union Coll.,* 30 AD2d 504, 505; Siegel, New York Practice, § 237). However, it does not require courts to permit futile amendments. Thus, where it is clear from the original and amended pleadings that the Statute of Limitations has expired, leave to amend may be denied *(Martens v Mercy Hosp.,* 64 AD2d 604; *Lewis v Wilson & Co.,* 275 App Div 9, 12; 3 Weinstein-Korn-Miller, NY Civ Prac, par 3025.23). An examination of the amended counterclaim in this case reveals that, if its allegations are believed, the amendment is timely. The amended complaint alleges that Estoff convinced the Suthers to sign the guarantees in October, 1973 without explaining to them the import of the document. It also alleges that until March, 1975 Estoff promised that he would take steps to remedy his alleged wrong. Although the Statute of Limitations in a legal malpractice action runs from the time of the alleged malpractice, an exception arises when the attorney continues to represent the client concerning the matter out of which the claim arises. In such a case, the statute begins to run from the date when the attorney's representation ends and not from the date of the alleged malpractice *(Gilbert Props. v Milstein,* 33 NY2d 857; *Grago v Robertson,* 49 AD2d 645; *Siegel v Kranis,* 29 AD2d 477; 1B Warren, Negligence, ch 15, Statute of Limitations, § 2.04, subd [2], par [a]). From the face of the pleading the proof could show that Estoff's representation of the Suthers terminated as late as March, 1975. If such is the fact, the service on March 6, 1978 may well have been within the three-year Statute of Limitations (CPLR 214, subd 6). A determination of the viability of the amendment for Statute of Limitations purposes

could only be accomplished after discovery, not yet had in this case. Special Term improperly, therefore, determined the Statute of Limitations issue at the pleading stage of this litigation. In any event, since the amendment of the counterclaim related to the same transactions or series of transactions as does the original counterclaim, as will be demonstrated in the discussion which follows, the amended pleading would be deemed interposed at the time of service of the original pleading in December, 1977 for Statute of Limitations purposes (CPLR 203, subd [e]; *Bilhorn v Farlow,* 60 AD2d 755).

Special Term erred in finding that the amended counterclaim did not arise out of the same transactions or series of transactions as those set forth in the original counterclaim. In the original counterclaim the Suthers allege that they intended to purchase property from Coe-Fisher and lease it back to the corporation. They also claim that the Bank informed them that the mortgage would be obtained if Estoff was their attorney in the matter. They agreed. The original counterclaim further alleges that Estoff informed them that they should sign the loan guarantee as the "first step" in acquiring the mortgage. Thus, it is apparent that in the original complaint the Suthers are seeking indemnification from Estoff because of deficiencies in his legal representation regarding their purchase of property from Coe-Fisher and the execution of the documents relating to the real estate transaction. Although the amended counterclaim sounds in malpractice and breach of contract and the original counterclaim alleges fraud, it is clear that these claims arise from the same series of transactions, even though the amended pleading asserts more facts. In reality, the amended pleading merely pleads different legal theories of recovery arising from the same transactions *(Deiso v Mobil Oil Corp.,* 56 AD2d 621). There is no indication that Estoff was actually prejudiced by the amendment served on him less than two months following his reply to the original counterclaim. Under these circumstances, it was an abuse of Special Term's discretion to deny leave to amend *(Dittmar Explosives v A. E. Ottaviano, Inc.,* 20 NY2d 498, 502-503; *Bilhorn v Farlow, supra; Gardner v Fyr-Fyter Co.,* 55 AD2d 816).

The order should be reversed and the motion to amend granted.

HANCOCK, JR., SCHNEPP, DOERR and WITMER, JJ., concur.

Order unanimously reversed, with costs, and motion granted.