Terrance HOFFMAN, as Special Administrator of the Estate of Hilda Johnson, Deceased, Terrance Hoffman, as Special Administrator of the Estate of James McGuffin, Deceased; James Olson; Andrew McGuffin or the heirs of Andrew McGuffin and the heirs of Oscar Olson, Plaintiffs and Appellees,

v.

Edwin L. JOHNSON, Defendant and Appellant,

and

Jean R. JOHNSON and Western Surety Company, a corporation of Sioux Falls, South Dakota, Defendants,

v.

Harry R. STEPHENS, Third-Party Defendant and Appellee.

No. 14523.

Supreme Court of South Dakota.

Argued Oct. 22, 1984.

Decided Sept. 6, 1985.

Glen H. Johnson of Banks & Johnson, Rapid City, for plaintiffs and appellees.

Charles Rick Johnson of Johnson, Eklund & Davis, Gregory, for defendant and appellant.

William G. Porter of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, for third-party defendant and appellee.

WOLLMAN, Justice.

This is an appeal from a judgment directing the payment of money and the delivery of mineral deeds and from an earlier summary judgment dismissing defendants' third-party complaint and determining certain other interlocutory matters. We affirm.

The procedural history of this case is rather complex, involving as it does numerous heirs of several estates. All but a few of the parties settled with the appellant during the course of litigation; consequently, we will identify in detail only those parties who are involved in this appeal.

Edgar McGuffin, a bachelor, died intestate in Harding County, South Dakota, on December 27, 1963. Surviving him were a sister, Hilda Johnson, and two brothers, James and McMillan. Edgar was predeceased by three brothers and one sister,

who left surviving them a total of sixteen children.

Edgar's estate consisted principally of two parcels of land in Harding County, Tract I and Tract II, consisting, respectively, of some 190 acres and some 153 acres.

Hilda Johnson had six children: Edwin Johnson, appellant in this action, Mary Hoffman, Willard Johnson, Merle Johnson Ray, Ethel Johnson Hagley, and Carroll Johnson.

Hilda Johnson and her brother James asked Edwin to serve as the administrator of Edgar's estate. Edwin agreed to do so and retained his long-time personal attorney, Harry Stephens of Belle Fourche, to assist him with the legal matters connected with the administration of the estate. Edwin was duly appointed as administrator on March 17, 1963. On May 12, 1964, the appraisers filed their inventory and appraisement of the estate property, valuing Tract I and Tract II at twenty dollars per acre.

On June 18, 1964, Edwin petitioned the court for an order permitting the sale of the real estate. Only one bid was received on each tract. Travers Land & Cattle Co. submitted a bid of twenty-one dollars per acre on Tract I, and one Clair C. Janvrin submitted a bid of twenty-five dollars per acre on Tract II.

Edwin testified that he was disappointed in the bids and suspected some collusion between the two bidders. He met with attorney Stephens and told him that he was going to confront the bidders to try to get some more money for the estate. Edwin testified that he spoke with John Travers, owner of Travers Land & Cattle Co., and suggested that the land should be worth more than the amount bid and that the mineral rights alone should be worth some money. Travers allegedly responded that he would not give a dime for all of the mineral rights because there was nothing there but that as a token of his seriousness he would give the mineral rights to Edwin if he, Travers, ultimately obtained the property. Travers raised the bid on Tract I to twenty-five dollars per acre, and the tract was ultimately sold to Travers Land & Cattle Co.

Edwin had a similar conversation with Janvrin, who agreed with Travers' assessment of the value of the mineral rights. According to Edwin, Janvrin also suggested that he would give the mineral rights to Edwin, if he, Janvrin, ultimately was the successful bidder on Tract II. Janvrin raised his bid to thirty dollars per acre and was given an administrator's deed to Tract II.

According to Edwin, when he told Stephens of his success in getting the bids raised and of the mineral rights offer, Stephens congratulated him on his success on getting the higher bids and advised him that the mineral rights would have to be taken in the name of Edwin's wife, Jean.

On November 4 or 5, 1964, Travers came to Stephens' law office and accepted delivery of the administrator's deed to Tract I. At the same time, Travers gave Edwin a mineral rights deed on Tract I naming Jean R. Johnson as grantee. Janvrin conveyed seventy-five percent of the mineral rights on Tract II to Jean R. Johnson.

Edwin promptly recorded the mineral rights deeds. He testified that he then told his mother and his uncle James and his sister Merle Ray about the transaction. Mrs. Ray acknowledged at trial that she recalled that Edwin had told her about the mineral deeds.

James McGuffin died in 1965. Hilda Johnson died on December 25, 1966.

On August 20, 1970, Edwin and Jean executed an oil and gas lease covering the property in Tract I in favor of Depco, Inc.

Sometime in 1972 or 1973, Edwin's brother Willard offered to pay $7.50 per acre to lease the mineral rights on the property. Edwin testified that at one time in 1972 or 1973 he had told Willard that he and Jean had purchased the mineral rights on the property.

In 1973 an oil well was completed on the Travers' property. Included within the production area was the Tract I property.

The well began producing in mid 1974. Jean Johnson was notified that she would share in the royalties from the production. Edwin testified that during 1974 inquiries were made by his two brothers and one of his sisters regarding their interest in the oil royalties. Edwin testified that he went to see Stephens, who told him that everything was legal and that he had nothing to worry about.

In May of 1977 the three children of Edgar McGuffin's deceased brother Fred McGuffin brought an action against Edwin and Jean with respect to the mineral rights on Tract I and Tract II. This action was dismissed pursuant to a stipulation and agreement for settlement on July 31, 1979.

On May 23, 1980, the present action was commenced by Mary Hoffman in her capacity as the special administratrix of the estates of Hilda Johnson, James McGuffin, and McMillan McGuffin. Edwin and Jean Johnson filed a third-party complaint against attorney Stephens based upon his alleged negligence in advising Edwin that title to the mineral rights could be taken in Jean's name. On May 3, 1982, the trial court entered a summary judgment dismissing the third-party complaint against Stephens.

On February 8, 1984, the trial court entered a judgment against Edwin and Jean in the total amount of $119,760.37 in favor of Mary Hoffman in her capacity as special administratrix of the several estates and to the other non-settling heirs of Edgar McGuffin. The judgment also ordered Jean to convey certain fractional interests in the mineral rights to Mary Hoffman and to the other non-settling heirs.*

Only Edwin Johnson has appealed from the judgment.

## I.

### Applicable Statute of Limitations

Edwin contends that the trial court erred in applying the six-year statute of limita-
tions set forth in SDCL 15–2–13(6), rather than the three-year statute provided by SDCL 30–22–67. We do not agree.

■ At the outset, we note that clearly the purported conveyance of the mineral rights in Edgar's land violated SDCL 30–22–50, which provides:

Unless otherwise specifically provided in decedent's will, no executor or administrator may, directly or indirectly, purchase any property of the estate he represents, nor may he be interested in any sale.

■ That the conveyance was to Edwin's wife rather than to himself was of no legal significance, of course, for this court held in *Cooper v. Burchett,* 66 S.D. 162, 279 N.W. 598 (1938), that the provisions of what is now SDCL 30–22–50 prohibit a sale of estate property to an administrator's wife.

SDCL 30–22–67 provides:

No action for the recovery of any property of an estate sold by the executor or administrator, under the provisions of this chapter, can be maintained by any heir or other person claiming under the decedent, or by any creditor of the decedent, unless it be commenced within three years next after the sale. Provided that an action to set aside the sale upon the ground of fraud may be commenced at any time within three years from the discovery of the facts constituting the fraud.

This section shall not apply to minors, or others under any legal disability to sue at the time when the right of action first accrues; but all such persons may commence an action at any time within three years after the removal of the disability.

The trial court correctly held that this statute was inapplicable inasmuch as plaintiffs were not seeking to set aside the sale of property to the Travers Land & Cattle

---

* Mary Hoffman died during the pendency of this appeal and Terrance Hoffman was substituted as a party.

Co. or to Janvrin. *See Halladay v. Verschoor*, 381 F.2d 100 (8th Cir.1967).

The trial court held that because plaintiffs were seeking to impress a trust upon the holder of the mineral rights, the applicable statute of limitations was that set forth at SDCL 15–2–13(6), which provides:

Except where, in special cases, a different limitation is prescribed by statute, the following civil actions other than for the recovery of real property can be commenced only within six years after the cause of action shall have accrued:

. . . .

(6) An action for relief on the ground of fraud, in cases which heretofore were solely cognizable by the court of chancery. . . .

SDCL 15–2–3 provides: "In an action for relief on the ground of fraud the cause of action shall not be deemed to have accrued until the aggrieved party discovers, or has actual or constructive notice of, the facts constituting the fraud."

Edwin contends that plaintiffs were given constructive notice of the transactions by the recordation of the two mineral rights deeds to Jean Johnson on November 5, 1964. SDCL 43–28–15 provides:

The recording and deposit of an instrument, proved and certified according to the provisions of §§ 18–4–17 to 18–4–20, inclusive, and §§ 43–28–8 to 43–28–10, are constructive notice of the execution of such instrument to all purchasers or encumbrances subsequent to the recording.

■ Plaintiffs were obviously neither subsequent purchasers or encumbrancers. Thus they are not chargeable under SDCL 43–28–15 with notice. There are situations, of course, in which public records charge a person with notice of matters contained therein. For example, in *City of Fort Pierre v. Hall*, 19 S.D. 663, 104 N.W. 470 (1905), the city was held to be bound to have knowledge of matters that were contained within its own records. In *Stianson v. Stianson*, 40 S.D. 322, 167 N.W. 237 (1918), heirs were held to be charged with knowledge that the administrator of the estate had purchased estate property at a mortgage foreclosure sale. In that case, however, the court emphasized the fact that the administrator had been in open possession of the land for at least nine years after the youngest of the heirs attained majority. Indeed, three of the plaintiff-heirs had visited the land on a number of occasions during the time the administrator was in possession of and realizing the income from the property. Under those circumstances, the court correctly held that the heirs had slept on their rights.

■ In the case before us, however, we do not have the open and notorious claim of right by Edwin and Jean to the mineral rights that marked the administrator's claim of possession in *Stianson*. Accordingly, we conclude that the trial court correctly held that plaintiffs were not charged with notice under SDCL 43–28–15 and that they had not been put on constructive notice by any acts of Edwin and Jean.

Although Edwin contends that his conversations with his brother Willard, his mother, his sisters, and his uncle James put those individuals on notice regarding Jean Johnson's ownership of the mineral rights, the trial court found that Edwin's disclosures were not sufficient to charge those persons with actual or constructive notice. We conclude that the trial court's finding in this regard is not clearly erroneous.

## II.

### *Dismissal of Third-Party Complaint*

The trial court entered summary judgment dismissing Edwin's third-party complaint against attorney Stephens on the ground that the claim was barred by the statute of limitations in effect at the time the allegedly negligent legal advice was given.

■ In 1977 the South Dakota Legislature enacted what is now SDCL 15–2–14.2, which provides:

An action against a licensed attorney, his agent or employee, for malpractice, error, mistake or omission, whether

based upon contract or tort, can be commenced only within three years after the alleged malpractice, error, mistake or omission shall have occurred. This section shall be prospective in application. That statute by its own terms applies only to claims of legal malpractice arising after the effective date of that statute. *See Kotval v. Gridley*, 698 F.2d 344 (8th Cir.1983). The trial court therefore correctly held that Edwin's claim against Stephens was governed by our general six-year statute of limitations found at SDCL 15–2–13(1):

> Except where, in special cases, a different limitation is prescribed by statute, the following civil actions other than for the recovery of real property can be commenced only within six years after the cause of action shall have accrued:
>
> (1) An action upon a contract, obligation, or liability, express or implied, excepting those mentioned in §§ 15–2–6 to 15–2–8, inclusive, and subdivisions (4) and (5) of § 15–2–15....

Edwin argues that the six-year statute of limitations should not be deemed to have commenced running until he either discovered Stephens' alleged malpractice or suffered damages as a result thereof, which in this case would be the date on which plaintiffs commenced their action against him.

■ The general rule is that in the absence of an attorney's fraudulent concealment of his negligent advice, the statute of limitations on a claim of attorney malpractice begins to run at the time of the alleged negligence and not from the time when the negligence is discovered or the consequential damages are imposed. *See* Annot. 18 A.L.R.3d 978, 986–87 (1968).

We have recognized the principle that the fraudulent concealment of negligence tolls the applicable statute of limitations in a medical malpractice claim. *Hinkle v. Hargens*, 76 S.D. 520, 81 N.W.2d 888 (1957). *See also Holy Cross Parish v. Huether*, 308 N.W.2d 575 (S.D.1981). There is no allegation of fraudulent concealment in Edwin's third-party complaint against Stephens, however.

In *Alberts v. Giebink*, 299 N.W.2d 454 (S.D.1980), we discussed SDCL 15–2–14.1, the statute of limitations governing actions based upon medical malpractice. After reviewing the history of our medical malpractice statutes of limitation, we concluded that by providing in SDCL 15–2–14.1 that a cause of action for medical malpractice may be brought only within two years after the malpractice "shall have occurred," the legislature had specifically rejected the discovery rule in medical malpractice cases by repealing SDCL 15–2–15(3), which the Federal District Court of South Dakota had construed as providing for a discovery rule. *See Shinabarger v. Jatoi*, 385 F.Supp. 707 (D.S.D.1974). We held in *Alberts* that we could not abridge the clear legislative intent expressed in the statute.

In *Holy Cross Parish v. Huether, supra*, we noted that the statute of limitations governing claims based upon legal malpractice is also deemed to commence to run from the date the alleged malpractice occurred. 308 N.W.2d at 578, n. *.

■ Although both SDCL 15–2–14.1 and 15–2–14.2 apply only to causes of action arising after the effective dates of those statutes, we conclude that we should apply the now clearly expressed legislative intent to those legal malpractice claims that are still governed by SDCL 15–2–13(1) by holding that the date of the occurrence of the legal malpractice triggers the running of the statute of limitations, subject only to the fraudulent concealment exception. It follows, then, that the trial court correctly granted summary judgment dismissing the third-party complaint.

We have considered the other issues raised by the appeal and conclude that they are without merit.

The summary judgment and the judgment are affirmed.

FOSHEIM, C.J., MORGAN, J., and WUEST, Acting J., concur.

HENDERSON, J., concurs in result.