MARJORIE MULLER, Respondent, v LEON H. STURMAN et al., Individually and Doing Business as WOODS, OVIATT, GILMAN, STURMAN & CLARKE, Appellants, et al., Defendant.

Fourth Department, March 27, 1981

APPEARANCES OF COUNSEL

*Woods, Oviatt, Gilman, Sturman & Clarke*, appellant *pro se* and *John Titus* for appellants.

*Lamb, Webster, Walz, Donovan & Sullivan (Eugene T. Clifford* of counsel), for respondent.

OPINION OF THE COURT

SCHNEPP, J.

Appellants appeal from an order of Special Term denying their motion for summary judgment in this malpractice action which is based on their alleged failure to effect proper and timely service of process in a lawsuit brought to enforce payment on a promissory note. Appellants, who individually comprise the members of the defendant law firm, claim that the within action commenced more than three years after its accrual is barred by the Statute of Limitations and that no factual issue exists which sub-

stantiates plaintiff's claim that she was continuously represented by them subsequent to their alleged act of malpractice.

In 1971 plaintiff retained Robert W. Clarke, one of the appellants, to represent her in various matters involving her former husband, defendant Emil Muller, which included collection of the principal and interest of a $13,000 promissory note dated May 24, 1967, which he executed and delivered to her. The appellants prepared a summons and complaint seeking payment of the note which was improperly served on May 5, 1972 on one of Emil Muller's sons. Muller, in fact, has never been served in that action. In their moving papers appellants claim that they did not prosecute the action on the note or represent plaintiff after November 8, 1973 when she told Clarke to do nothing further in connection with her legal affairs including collection of the note. Appellants offered various records to verify the date and nature of this conference between the parties. To further buttress their claim, appellants point to plaintiff's testimony in an examination before trial that, while she did not remember any such conversation, she believed that after a conversation with Clarke in November, 1973 appellants had ceased to represent her and "dropped" her lawsuits and that she looked until the summer of 1977 for another attorney to represent her. In response plaintiff claims that a conversation between her and Clarke occurred in the summer of 1975, not November, 1973, when she telephoned him to seek legal advice in obtaining payment of overdue alimony. She denies, however, that she ever gave instructions to discontinue efforts to enforce payment of the note. She further states that the tenor of appellants' cover letter of May 28, 1976 forwarding her file supports her contention that the attorney-client relationship terminated at about that time. Her testimony indicates that she knew that the original summons was served by mistake on her son and that she did not know whether process was ever served on Muller. Although plaintiff testified that she assumed that the appellants were proceeding with the claims against Muller and understood that the summons was to be re-served, she made no inquiry of appellants as to the status of the lawsuit.

This malpractice action was commenced on April 20, 1978, clearly beyond the three-year period of limitation (CPLR 214, subd 6) if measured from November 8, 1973, when appellants claim the attorney-client relationship ceased, or from May 24, 1974, six years after the due date of the note and the time limited by law for commencing an action on the note (CPLR 213). Plaintiff contends, however, that the malpractice action accrued when her "continuous representation" ended either in May, 1976, when her file was returned to her, or in August, 1977, when the original note was returned to her by the appellants, and that factual issues are present which require a trial.

A cause of action in malpractice generally accrues at the time of the injury (see *Schwartz v Heyden Newport Chem. Corp.*, 12 NY2d 212, remittitur amd 12 NY2d 1073; *Conklin v Draper*, 254 NY 620; *Schiffman v Hospital for Joint Diseases*, 36 AD2d 31). The "continuous treatment" exception extends the accrual of the cause of action in medical malpractice to the end of a patient's treatment when the course of treatment which includes the wrongful act runs continuously and is related to the same original condition, injury or illness *(Borgia v City of New York*, 12 NY2d 151; CPLR 214-a). In *Borgia v City of New York (supra*, p 157) the Court of Appeals defined continuous treatment as "treatment for the same or related illnesses or injuries, continuing after the alleged acts of malpractice, not mere continuity of a general physician-patient relationship".

The courts have also applied the "continuous treatment" rule to other areas of professional malpractice and have limited its application to instances where the professional's involvement after the alleged malpractice is for the performance of the same or related services and is not merely continuity of a general professional relationship *(Naetzker v Brocton Cent. School Dist.*, 50 AD2d 142, revd on other grounds 41 NY2d 929; *Tool v Boutelle*, 91 Misc 2d 464; *Dura-Bilt Remodelers v Albanese*, 86 Misc 2d 172; see, also, 1 Weinstein-Korn-Miller, NY Civ Prac, par 214.22a, 1980 Supp, p 69). When applied to attorney malpractice the principle is referred to as the "continuous representation" rule (Siegel, Practice Commentaries, McKinney's Cons

Laws of NY, Book 7B, CPLR, C214:6, pp 436-439) and the accrual date of the cause of action is fixed when the attorney-client relationship ceases *(Gilbert Props. v Millstein,* 33 NY2d 857; *Siegel v Kranis,* 29 AD2d 477).

In those cases where the continuous representation doctrine has been applied to attorney malpractice there are clear indicia of an ongoing, continuous, developing and dependent relationship between the client and the attorney often involving an attempt by the attorney to rectify an alleged act of malpractice (see, e.g., *Citibank [N.Y. State], N.A. v Suthers,* 68 AD2d 790; *Grago v Robertson,* 49 AD2d 645; *Siegel v Kranis,* 29 AD2d 477, 34 AD2d 988, *supra).* In *Citibank (N.Y. State), N.A. v Suthers (supra)* the continuous representation exception was applied to toll the Statute of Limitations where a defendant attorney made promises to take remedial steps to cure an earlier alleged wrong. It was there held that plaintiffs placed their trust and confidence in the defendant attorney and that an ongoing, developing and continuous relationship concerning the same matter existed for an extended period after the alleged malpractice. In *Grago v Robertson (supra)* the defendant attorney actively represented plaintiff concerning the same matter continuously for six years after the alleged breach of duty. The court held that the action in attorney malpractice did not accrue until the attorney's representation concerning the particular matter terminated. In *Siegel v Kranis (supra)* the court held that the plaintiffs' cause of action for legal malpractice based on the failure to file a timely claim in 1960 did not accrue until a trial of the issue of the timeliness of filing resulted in an adverse determination in 1965. There, during the five-year period, the defendant attorney attempted to undo the alleged act of malpractice and represented plaintiffs in several ongoing and developing phases of the litigation during which time there was no indication that the plaintiffs did not have trust and confidence in their attorney. Clearly, there was a continuity in their relationship over this span of time from the alleged malpractice in 1960 to the final determination in 1965.

Thus it is apparent that the application of the continuous

representation doctrine in attorney malpractice envisions a relationship between the parties that is marked with trust and confidence. It is a relationship which is not sporadic but developing and involves a continuity of the professional services from which the alleged malpractice stems. None of these factors is present in the instant case. There is a question of fact as to when the conversation between plaintiff and Clarke took place, e.g., November 8, 1973 or the summer of 1975, but even if that question is resolved in plaintiff's favor the record does not establish the requisite continuity in the attorney-client relationship to warrant application of the continuous representation doctrine. By her own testimony, plaintiff admits that after November, 1973 she had no conversation with any member of the law firm until she inquired about collection of overdue alimony. Notably, plaintiff's concern was alimony due her and not the unpaid $13,000 note. The record is silent as to further contact between plaintiff and appellants until her file was returned in May, 1976. During this hiatus of approximately two and one-half years appellants did nothing to foster the impression or to lull plaintiff into believing that the action on the note was proceeding and she, who prior to that time had relatively frequent contact with the firm and professed knowing that the Statute of Limitations on the note expired on May 24, 1974, never inquired whether the summons had been re-served or whether the action was pending. There was no active legal representation and, implicitly, no expectation of representation: appellants did not attempt to collect on the note during this period, and plaintiff did not press them to do so. Clearly, there was no continuity in the parties' relationship which, at best, can only be characterized as sporadic. Furthermore, after November 8, 1973 there is no evidence as to any relationship of trust and confidence between the parties and it would not have been premature for plaintiff to have sued appellants when the statutory period for enforcing payment on the note apparently expired on May 24, 1974. Any of the alleged acts of negligence by appellants were manifest on May 24, 1974, no corrective litigation was then pending or contemplated and no alternative to taking or seeking corrective measures existed. Even if plaintiff assumed that the summons had

been reserved and the action were pending, ignorance on her part of the existence of a cause of action in her favor against appellants would not toll the statute (see *Gilbert Props. v Millstein*, 40 AD2d 100, 103, affd 33 NY2d 857, *supra*). As we said in *Citibank* (68 AD2d 790, *supra*), the statute runs from the time of the alleged malpractice unless an attorney continues to represent the client concerning the matter out of which the claim arises. In such case the statute begins to run from the date when the attorney's representation ends and not from the date of the alleged malpractice. Here, plaintiff's cause of action, based on appellants' negligence and failure to have the summons served before the Statute of Limitations on the note expired, must rest on a claim of continued representation for the same or a related legal service. However, the record is devoid of any proof that after November 8, 1973 appellants rendered any legal services designed to effect collection of the note or that, in fact, an attorney-client relationship existed after that date.

The existence of a bona fide issue raised by evidentiary facts and not based on conclusory or irrelevant allegations is necessary to defeat summary judgment *(Rotuba Extruders v Ceppos*, 46 NY2d 223). Appellants have tendered evidentiary proof establishing their defense based on the Statute of Limitations "sufficiently to warrant the court as a matter of law in directing judgment" in their favor (CPLR 3212, subd [b]; see *Goldstein v County of Monroe*, 77 AD2d 232, 236), and plaintiff has not met her burden to show "facts sufficient to require a trial of any issue of fact" as to her continued representation by the appellants or tendered an acceptable excuse for her failure to do so (CPLR 3212, subd [b]; see *Zuckerman v City of New York*, 49 NY2d 557; *Freedman v Chemical Constr. Corp.*, 43 NY2d 260). Plaintiff's action was not timely commenced on April 20, 1978 since more than three years elapsed after its accrual and appellants' motion for summary judgment was improperly denied.

The order should be reversed and appellant's motion for summary judgment dismissing the cause of action should be granted.

CARDAMONE, J. P., HANCOCK, JR., and DENMAN, JJ., concur with SCHNEPP, J.; CALLAHAN, J., not participating.

Order reversed with costs, motion granted and complaint dismissed.