Charles E. BREDTHAUER and Cindy
S. Bredthauer, Husband and Wife,
Appellants (Plaintiffs),

v.

CHRISTIAN, SPRING, SEILBACH AND
ASSOCIATES, a Montana Corporation;
TSP, a Wyoming Corporation; Davis
Surveying, a Wyoming Corporation;
the Board of County Commissioners of
Campbell County; Harry Underwood;
W.B. Fitch; and B.L. Tarver, Appellees
(Defendants).

No. 91–78.

Supreme Court of Wyoming.

Jan. 24, 1992.

John R. Hursh and Maureen T. Dono-
houe of Hursh & Donohoue, P.C., Riverton,
and Larry R. Clapp of Clapp & Associates,
Casper, for appellants.

Lawrence G. Orr and Curtis B. Buchham-
mer of Guy, Williams, White & Argeris,
Cheyenne, for appellee Christian, Spring,
Seilbach and Associates.

Robert G. Berger of Lonabaugh and
Riggs, Sheridan, for appellee TSP.

Gary R. Scott and Steven K. Sharpe of
Hirst & Applegate, Cheyenne, for appellee
Davis Surveying.

Russell A. Hansen, Campbell County
Atty., Gillette, for appellee Bd. of County
Com'rs of Campbell County.

Before URBIGKIT, C.J., and THOMAS,
CARDINE, MACY and GOLDEN, JJ.

MACY, Justice.

This is an appeal from a summary judg-
ment dismissing a negligence action
brought by Appellants Charles E. Bred-
thauer and Cindy S. Bredthauer against
Appellees Christian, Spring, Seilbach and
Associates, a Montana corporation; TSP, a
Wyoming corporation; and Davis Survey-
ing, a Wyoming corporation, for conducting
erroneous land surveys and against Appel-
lee Board of County Commissioners of
Campbell County for filing the land sur-
veys even though it knew they were incor-
rect. The district court found the Bred-
thauers' cause of action accrued more than

two years prior to the time they filed their complaint.

We reverse and remand.

The Bredthauers present their issue in the form of a declaratory statement:

The Trial Court erred by finding that the causes of action against the surveyors and the County accrued to the Plaintiff-Appellants on June 9, 1988, and as such barred their claims filed on July 2[0], 1990, by operation of W.S. 1–39–113 and W.S. 1–3–107(a)(i).

The Bredthauers purchased a parcel of land in 1977, which became known as the Bredthauer Subdivision in May 1981 when the Board of County Commissioners approved the subdivision plat. The Bredthauers also purchased a second parcel of land, a tract in the Pineview Ranchettes Subdivision, in 1981 and a third parcel in 1982, which became known as the Bredthauer–West Subdivision when the Board of County Commissioners approved the plat in May 1982. Christian, Spring, Seilbach and Associates surveyed the first and third parcels in 1976. TSP surveyed the Pineview Ranchettes Subdivision in 1977, and the Board of County Commissioners approved that survey in 1979.

Problems arose over the years concerning the accuracy of the land surveys, but these problems were resolved in a manner which permitted the Bredthauers to continue developing and selling the lots in their subdivisions. One of these problems involved a land survey performed by Davis Surveying indicating the location of a water well (the State Engineer rejected a 1984 application for water rights because the survey was incorrect).

At a June 9, 1988, closing on the sale of property in one of the Bredthauers' subdivisions, an agent for the title insurance company advised the Bredthauers that he was concerned about the survey discrepancies and that he would not issue any more title insurance policies for lots within the subdivision until his concerns were resolved. Upon the advice of their attorney, the Bredthauers retained a professional land surveyor to determine whether a survey problem existed, what the problem was, and who was responsible for it. The Bredthauers received the following report from their land surveyor on July 28, 1988:

Campbell County Abstract's recent decision refusing to issue title insurance is an effort to resolve a land possession-surveying problem which has existed for quite some time. The original survey of T52N,R73W was executed by the General Land Office in 1883. In 1968, a survey was conducted by Frank Luers, a local surveyor, along the east Township boundary. His "Plat of Unsurveyed Lands[,"] as filed in the Office of the Campbell County Clerk, shows that a problem existed along the Township exterior. In 1976, another surveyor, Lawrence Potter, filed "Certified Land Corner Recordations" for the section corners along the same Township boundary indicating that this same problem existed. In 1976, a survey was executed and a map prepared by Christian, Spring, Seilbach and Associates (CSSA). This map titled "Ten Tracts Map" was prepared for Duke Marquiss but is not on file at the Office of the Campbell County Clerk. In 1977, CSSA prepared a "Record of Survey" map, which detailed the overlaps between the "Ten Tracts Map" and the actual section boundaries. This map is not on file in the Office of the Campbell County Clerk. The subdivision map for Pineview Ranchettes Subdivision, as prepared by TSP was filed in 1979. The BLM Dependent Resurvey of T52N,R73W was approved and filed in 1980. Bredthauer Subdivision and Bredthauer–West Subdivision plats prepared by Davis Surveying were filed in 1981 and 1982, respectively.

[Each of these surveys and maps is then described and analyzed by the report.]

In conclusion, the problems that now face the Bredthauers should never have occurred. A registered land surveyor is charged with locating legal property boundaries and this was not satisfactorily done. CSSA p[er]formed a wrong survey and did not correct it with a filed plat once found. TSP and Davis perpetuated

this erroneous survey even though evidence was available that a problem existed. In addition, ownership and encumb[ ]rance reports for Bredthauer and Bredthauer–West Subdivisions should have indicated a problem. In order to now correct this problem, an accurate survey should be conducted and a plat prepared detailing the affected properties. Once completed, new descriptions could be written describing the actual possession lines.

The Bredthauers lost a sale of property in August 1988 because they could not get title insurance for the property, and they filed their complaint on July 20, 1990. The district court determined that their claims were barred by operation of Wyo. Stat. §§ 1–3–107 (1988)[1] and 1–39–113 (Supp. 1991)[2] because their complaint was filed more than two years after the "discovery" date. The district court selected June 9, 1988, as the "discovery" date as that was the date on which the title insurance agent advised the Bredthauers that he would not continue to issue title insurance policies because of the survey discrepancies. The Bredthauers contend the "discovery" date was not earlier than July 28, 1988, the date on which they received their land surveyor's report.

The issue to be decided here was initially joined by means of motions to dismiss under W.R.C.P. 12(b)(6). The district court considered matters outside the pleadings and, hence, orders of dismissal were entered pursuant to W.R.C.P. 56. The dis-

trict court's orders disposed of only some of the issues and parties to the action, but the district court made the requisite certifications pursuant to W.R.C.P. 54(b). We have ascertained from the record that the district court, at least implicitly, furnished reasons for these certifications which demonstrate certification would materially aid judicial efficiency. *See Alexander v. United States*, 803 P.2d 61 (Wyo.1990), and *Tader v. Tader*, 737 P.2d 1065 (Wyo.1987). We must conduct our analysis in accordance with the review standards applicable to summary judgments. *Baros v. Wells*, 780 P.2d 341, 342 (Wyo.1989).

Wyoming is a "discovery" state, which means the running of the statute of limitations is not triggered until such time as the plaintiff knows or has reason to know of the existence of the cause of action. *Mills v. Garlow*, 768 P.2d 554, 555 (Wyo.1989). The question of when the statute of limitations begins to run is one of law when the facts, as in this case, are not in dispute. *Id.; Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677 (Ct.App. 1981). *See also Young v. Young*, 709 P.2d 1254 (Wyo.1985), and *Duke v. Housen*, 589 P.2d 334 (Wyo.), *cert. denied*, 444 U.S. 863, 100 S.Ct. 132, 62 L.Ed.2d 86 (1979). We hold that, as a matter of law, the Bredthauers' cause of action did not accrue before July 28, 1988, the date on which they received their land surveyor's report advising them that the surveys conducted by the

---

**1.** Section 1–3–107(a) provides:

(a) A cause of action arising from an act, error or omission in the rendering of licensed or certified professional or health care services shall be brought within the greater of the following times:

(i) Within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after discovery of the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:

(A) Not reasonably discoverable within a two (2) year period; or

(B) The claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence.

**2.** Section 1–39–113(a) provides:

(a) No action shall be brought under this act against a governmental entity unless the claim upon which the action is based is presented to the entity as an itemized statement in writing within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after discovery of the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:

(i) Not reasonably discoverable within a two (2) year period; or

(ii) The claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence.

appellee surveyors were, in its opinion, in error.

In reaching this conclusion, we have not only applied our own precedents which provide guidance in determining when a cause of action accrues, *Mills*, 768 P.2d 554, but we have also been influenced by cases from other jurisdictions which have dealt with this problem. In *Bonz v. Sudweeks*, 119 Idaho 539, 808 P.2d 876 (1991), the appellate court determined that a cause of action for professional malpractice (attorney) did not accrue until a potential investor withdrew his financial support from a real estate development. In that case, a law firm filed a release of a *lis pendens* in the wrong county. The law firm contended that the cause of action accrued when the law firm made that filing. The appellate court disagreed and held that the appellant suffered no damage until the investor withdrew its financial support from the proposed development venture.

In *Martin v. Crowley, Wade and Milstead, Inc.*, 702 S.W.2d 57 (Mo.1985) (en banc), the appellate court held that the appellant had no duty to make sure the boundary markers were properly located, even though the defects were visible and ascertainable by an easy inspection of the land. The land surveyor made his survey in 1973, but the owners of the home which was built in accordance with that survey did not discover until 1981 that the house was located only six feet, rather than twelve feet, from their property line. As a result, the fair market value of their home diminished. The appellate court held that dismissal for failure to comply with the statute of limitations was improper because, "from the pleadings, involving a layman/expert relationship, nothing indicates plaintiffs knew or should have known of any reason, until May, 1981, to question defendant's work." *Id.* at 58.

In *New Market Poultry Farms, Inc. v. Fellows*, 51 N.J. 419, 241 A.2d 633 (1968), the court, in reversing a summary judgment grounded on the statute of limitations, held the plaintiff's allegation, that she did not discover the error of the previous land survey until a new survey was conducted, precluded the grant of summary judgment. *See Klinger v. Kightly*, 791 P.2d 868 (Utah 1990); *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192 (D.C.App. 1984); *State v. Childress*, 35 Wash.App. 314, 666 P.2d 941 (1983); *Mattingly v. Hopkins*, 254 Md. 88, 253 A.2d 904 (Ct.App. 1969); and CURTIS M. BROWN ET AL., EVIDENCE AND PROCEDURES FOR BOUNDARY LOCATION § 4–2 (2d ed. 1981).

We hold that the information conveyed to the Bredthauers on June 9, 1988, did not result in accrual of their cause of action. Under the facts in this case, the first event which would have had that effect was the receipt of the report from their land surveyor on July 28, 1988. We do not need to establish with precision whether it was that event or the frustration of a sale of land in August 1988 which was the precise date the statute of limitations commenced running. The determination of when a limitation period commences involves a balancing of relevant policy considerations with the facts of a given case. *Mills*, 768 P.2d at 555–56. Prior to receiving their land surveyor's report, the Bredthauers' claims would have been merely speculative and made on the basis of the title insurance agent's concerns. Under the circumstances in evidence here, we are convinced that the Bredthauers could properly rely upon the accuracy of existing land surveys until they discovered those surveys were unreliable and caused their lands to be unmerchantable. Prior to obtaining the resurvey, the Bredthauers could not have known the nature or extent of their damages, nor could they have known the cause or causes of those damages. They had no sound reason to seek a resurvey until and unless the circumstances warranted it. The events which occurred prior to July 28, 1988, simply did not put the Bredthauers on notice that a resurvey was necessary, as those events did not prevent them from continuing to develop and sell their subdivided tracts of land.

The Bredthauers filed their complaint on July 20, 1990, less than two years from the date their cause of action accrued. The district court's finding that the cause of

action accrued not later than June 9, 1988, is incorrect as a matter of law.

Reversed and remanded to the district court for further proceedings.