**Richard A. HILTZ, Appellant (Plaintiff),**

v.

**ROBERT W. HORN, P.C. and Robert W. Horn, individually, Appellees (Defendants).**

**No. 95–110.**

Supreme Court of Wyoming.

Jan. 23, 1996.

Georg Jensen of Law Offices of Georg Jensen, Cheyenne, for Appellant.

Richard E. Day of Williams, Porter, Day & Neville, P.C., Casper, for Appellees.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

MACY, Justice.

Appellant Richard Hiltz appeals from the summary judgment which was entered in favor of Appellees Robert W. Horn, P.C. and Robert Horn, individually. The district judge found that Hiltz's claims were barred by the statute of limitations, that no genuine issue as to any material fact existed, and that the appellees were entitled to have a judgment as a matter of law.

We affirm.

## ISSUES

Hiltz presents the following issues for our review:

1. Did the district court err in concluding that Wyoming has declined to adopt the continuing representation doctrine for legal malpractice actions?

2. Did the district court err in concluding that, as a matter of law, the plaintiff knew or had reason to know that he had a cause of action against the defendant for malpractice when there exists a clear dispute as to the material facts which would make up such knowledge?

3. Did the district court err in concluding that, as a matter of law, the plaintiff knew or had reason to know that he had a cause of action against the defendant for malpractice when there exists [a] dispute as to whether the defendant concealed or failed to disclose material facts which would have given rise to any such knowledge on behalf of the plaintiff?

## FACTS

This case began as a legal malpractice action which was filed on November 29, 1993, against the appellees. The action arose out of Horn's legal representation of Hiltz on a 1983 post-divorce matter.

Hiltz and his ex-wife divorced in 1982. The divorce decree required Hiltz to pay child support for the couple's two children in the amount of $250 per month per child with annual increases of $25 per month per child. Late in August of 1983, Hiltz contacted Horn about a petition for an order to show cause which Hiltz's ex-wife had served upon him and which alleged that he was in arrears on his child support obligations. Hiltz sought Horn's assistance in this matter as well as in having the amount of his child support payments reduced. On September 2, 1983, Hiltz and Horn entered into an attorney-client relationship by executing a contract for legal services.

During the course of this representation, Horn communicated orally and in writing with the ex-wife's attorney. After some negotiating, Hiltz and his ex-wife orally agreed

to decrease the amount of the child support payments and to have the ex-wife's attorney reduce this oral agreement to writing. An agreement was prepared, signed by the ex-wife, and transmitted to Horn. Horn forwarded the agreement to Hiltz, requesting that Hiltz sign the agreement, have it notarized, and return it to Horn as soon as possible.

The proposed agreement would have decreased the amount of the child support payments to $200 per month per child, and the annual increase in support payments of $25 per month per child would have been terminated. Although it is not clear as to what discussions took place between Hiltz and Horn with regard to this agreement, Hiltz ultimately returned the agreement to Horn along with the following handwritten notation: "Bob, I circled the section I do not agree with, please take care of this and let me know how it comes out. Thanks. Rich Hiltz." The referenced section provided:

3. If Defendant violates the terms of this Agreement to Modify Decree of Divorce, all original terms concerning child support ordered by the Court in that Decree of Divorce granted to Plaintiff on the 23rd day of July, 1982, shall be reinstated, effective on the date of violation.

On December 13, 1983, Horn wrote to the ex-wife's attorney, advising him that Hiltz had very strong objections to paragraph three of the agreement and, as a result, had refused to sign the agreement unless the paragraph was deleted. The letter showed that a copy was sent to Hiltz. Nothing in the record indicates that any further communication occurred between Horn and the ex-wife's attorney with regard to this matter following the December 13th letter. Although Hiltz was aware that the agreement to modify the divorce decree had not been finalized, he nonetheless began paying the reduced child support amount.

The next time Horn apparently communicated with Hiltz was on December 29, 1983, when in a telephone conversation they discussed a divorce which Hiltz wanted to get from his third wife. The only evidence of any further contact between Hiltz and Horn prior to December of 1990 was a telephone record which indicated that a five-minute telephone call had been made to Horn's office on April 28, 1984. Neither party could recall what the subject matter of that conversation was.

While nothing in the record indicates that Hiltz communicated with Horn about this matter subsequent to December 13, 1983, until December of 1990, evidence was presented which revealed that Hiltz had directly communicated with his ex-wife's attorney during this period. In letters dated April 16, May 2, June 13, and July 12, 1984, his ex-wife's attorney advised Hiltz that he had failed to comply with the terms of the divorce decree by not carrying medical insurance for the children. Rather than notifying Horn, Hiltz dealt with his ex-wife's attorney himself. The ex-wife's attorney again wrote to Hiltz on September 24, 1984, with regard to his failure to abide by the divorce decree as he was behind in his child support payments.

Hiltz also communicated with his ex-wife on numerous occasions during this same period on the subject of child support payments. His ex-wife was of the opinion that Hiltz was not paying the proper amount of child support.

The State of Utah commenced an action in December of 1990 for the recovery of child support which was in arrears (a URESA action) against Hiltz, who was a Utah resident at that time. Between December of 1990 and April of 1991, the State of Utah served numerous documents upon Hiltz, advising him that his child support payments under the original divorce decree were delinquent.

Having received initial notices from the State of Utah, Hiltz contacted both the State of Utah and his ex-wife about the URESA action. Hiltz contacted Horn as well. Hiltz and Horn entered into a new attorney-client relationship by executing a new contract for legal services on February 14, 1991.

Horn filed a petition in the district court on Hiltz's behalf, seeking a modification of the original divorce decree to reflect the agreement previously reached by the parties as represented in the proposed 1983 agreement to modify the divorce decree. The

judge found that Hiltz had rejected the proposed agreement and that the terms of the original divorce decree were still in effect. The district judge awarded the ex-wife a judgment in the amount of the child support arrearage, calculating the amount under the original divorce decree. The State of Utah ultimately dismissed the URESA action.

Hiltz thereafter brought a legal malpractice action against the appellees. The appellees moved for a summary judgment on the grounds that no genuine issues as to any material fact existed and that they were entitled to have a judgment as a matter of law. Particularly, the appellees argued that the statute of limitations barred Hiltz's claims. The district court granted the appellees' motion for a summary judgment, and Hiltz makes this appeal from that order.

## DISCUSSION

### A. Standard of Review

 Summary judgment is appropriate when no genuine issue as to any material fact exists and when the prevailing party is entitled to have a judgment as a matter of law. *Kahrs v. Board of Trustees for Platte County School District No. 1*, 901 P.2d 404, 406 (Wyo.1995); *see also* W.R.C.P. 56(c). A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense which has been asserted by the parties. *Adkins v. Lawson*, 892 P.2d 128, 130 (Wyo.1995). We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. *Jack v. Enterprise Rent–A–Car Co. of Los Angeles*, 899 P.2d 891, 893 (Wyo.1995). We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. *Adkins*, 892 P.2d at 130. We do not accord any deference to the district court's decisions on issues of law. *Kahrs*, 901 P.2d at 406.

The party moving for summary judgment bears the initial burden of establishing a prima facie case for a summary judgment. If the movant carries this burden, the party opposing the summary judgment must come forward with specific facts to demonstrate that a genuine issue of material fact does exist. *Thunder Hawk By and Through Jensen v. Union Pacific Railroad Company*, 844 P.2d 1045, 1047 (Wyo.1992). General allegations and conclusory statements are not sufficient. *Board of County Commissioners of County of Laramie v. Laramie County School District Number One*, 884 P.2d 946, 956 (Wyo. 1994). Ordinarily, entering a summary judgment on the issue of when a statute of limitations commences to run would be inappropriate. *Palmer v. Borg–Warner Corporation*, 818 P.2d 632, 634 (Alaska 1990). However, if uncontroverted facts exist which specify when a reasonable person should have been placed on inquiry notice, we can resolve the question as a matter of law. *Id.; see also Bredthauer v. Christian, Spring, Seilbach and Associates*, 824 P.2d 560, 562 (Wyo. 1992); *Mills v. Garlow*, 768 P.2d 554, 556 (Wyo.1989).

### B. Statute of Limitations

Hiltz alleges that Horn committed legal malpractice when he failed to properly advise Hiltz about the law with regard to modifying child support obligations. He further contends that "Wyoming does recognize[ ] the doctrine that a malpractice claim does not run until the attorney-client relationship has ceased as to the matters on which the claim is based." Hiltz claims that the attorney-client relationship ceased in this case in December 1991.

 Legal malpractice actions are governed by a two-year limitation specified in WYO.STAT. § 1–3–107(a)(i) (1977). That statute provides:

(a) A cause of action arising from an act, error or omission in the rendering of licensed or certified professional or health care services shall be brought within the greater of the following times:

(i) Within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after discovery of

the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:

(A) Not reasonably discoverable within a two (2) year period; or

(B) The claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence.

Wyoming is a "discovery" state, which means that the statute of limitations is not triggered until such time as the plaintiff knows or has reason to know of the existence of the cause of action. *Bredthauer*, 824 P.2d at 562; *Mills*, 768 P.2d at 555. However, "[d]issatisfaction with an attorney's services or with an agreement is not 'inherently unknowable,'" and ignorance of the facts which constitute a cause of action does not toll the operation of the statute, except in the cases of infancy, incapacity, and certain types of fraud. *Began v. Dixon*, 547 A.2d 620, 623 (Del.Super.Ct.1988).

■ Hiltz argues that genuine issues of material fact existed which should have precluded a summary judgment from being entered. Specifically, Hiltz claims that he and Horn discussed the child support payments which Horn had advised Hiltz to make under the proposed agreement and that Horn continued to reassure Hiltz that his ex-wife could not claim additional support. Hiltz maintains that these factual disputes should prevent the entry of a summary judgment because they show that he neither knew nor should have known of the accrual of a cause of action.

We conclude that, even assuming such a factual dispute existed, the statute of limitations issue is still a question of law within the province of the court. *See Schoenrock v. Tappe*, 419 N.W.2d 197, 200–01 (S.D.1988). The record does not support the factual dispute claimed by Hiltz. Furthermore, these facts are not material in terms of the statute of limitations matter. They might have been important in the malpractice issue, but they are of little or no consequence to the statute of limitations issue. Rather, the material facts in the statute of limitations matter are the dates on which the various activities occurred between the 1983 representation and

the November 1993 filing of the lawsuit, and those facts are not disputed in this case. If all parties were allowed to toll the statute until they learned of the legal theory of a proposed action or until they pursued such an action, the statute of limitations would not have any purpose. *Began*, 547 A.2d at 623–24.

We agree with analysis provided by the district court in its conclusions of law:

Clearly, Hiltz knew or had reason to know of the existence of a cause of action against Horn as early as September 24, 1984, when [his ex-wife's] attorney ... advised Hiltz that he had failed to abide by the terms of the "Divorce Decree." Further and consistent with the finding of Judge Hamm in his letter decision of December 2, 1991, Hiltz['] deposition testimony is that from 1984 through 1990 he and his former wife argued about the fact that the amount of child support he was paying was not in accordance with the original Divorce Decree. Upon being served with the Utah URESA action in November or December of 1990, Hiltz' first response was to call his former wife ... and the Utah Recovery Services. By those calls, Hiltz was advised that the Utah URESA action was based upon the child support obligations contained in the original Divorce Decree. It was only after those calls that Hiltz again contacted attorney Horn.

Hiltz was aware of the absolute necessity that in order to modify a Decree of Divorce there must be a written agreement between the parties and a modification of the original Decree by the District Court. The Plaintiff knew or should have known of those requirements at the time that he was served with a "Petition to Show Cause Order" in 1983 and when he received the "Agreement to Modify Divorce Decree" prepared by his former wife's attorney. The fact that the Plaintiff objected to paragraph three (3) of that agreement demonstrates his awareness of the need for a written agreement in order to modify the original Decree. Hiltz' concern about the lack of a written signed Agreement and a formal modification is further demonstrated by his deposition

testimony and his Affidavit that he made a number of telephone calls to Horn in 1984 expressing concern over the fact that there was no written agreement between [him] and his former wife.

Due diligence on the part of Hiltz "... would certainly require a determination as to the reason for ..." [his ex-wife's] attorney['s] ... September, 1984 letter that Hiltz was not complying with the child support obligation of the Divorce Decree, [his ex-wife's] complaints from 1984 through 1990 that Hiltz was not paying child support in accordance with the original decree and the 1990 Utah URESA action based upon the original Decree. Even assuming that the Statute was not triggered until the 1990 Utah URESA action, this legal malpractice action should have been filed no later than November or December, 1992.

The Court finds that the applicable Statute of Limitations pertaining to legal malpractice actions has clearly run and that the Plaintiff's claim is barred by the running of that Statute.

(Citation omitted.) The uncontroverted facts in this case support the district court's conclusion that a reasonable person would have realized he had a cause of action at the very latest when he was served with the URESA documents and that he likely would have realized it even before that time.

■ Hiltz claims that this Court has adopted the doctrine of "continuous representation" in the context of legal malpractice actions and that Horn continuously represented him until December of 1991. We disagree with the assertion that we have adopted the continuous representation doctrine and note that the cases which Hiltz relies upon to support this assertion do not have anything to do with legal malpractice claims. The continuing representation doctrine is absent from our legal malpractice statute, and we decline to judicially adopt such a provision. The district court was correct in refusing to apply this doctrine to toll the statute of limitations in this matter.

■ Even if Wyoming did recognize the continuing representation doctrine, application of such a doctrine to the facts in this case would not save Appellant's cause of action.

[T]he continuous representation doctrine applies only to malpractice actions when there is a "clear indicia of an ongoing, continuous, developing, and dependent relationship between the client and the attorney...." *Muller v. Sturman,* 79 A.D.2d 482, 485, 437 N.Y.S.2d 205, 208 (1981). This relationship is one "which is not sporadic but developing and involves a continuity of the professional services from which the alleged malpractice stems." *Muller, supra* 437 N.Y.S.2d at 208. Furthermore, the application of this doctrine should only be applied where the "professional's involvement after the alleged malpractice is for the performance of the same or related services and is not merely continuity of a general professional relationship." *Muller, supra* 437 N.Y.S.2d at 207.

*Schoenrock,* 419 N.W.2d at 201 (some citations omitted).

Since the parties did not communicate with each other for a six-and-one-half-year period, an ongoing, continuous, developing, and dependent relationship did not exist. An attorney-client relationship does not continue indefinitely just because it has not been formally terminated. 419 N.W.2d at 202. Furthermore, the fact that Hiltz directly communicated with his ex-wife's attorney without notifying Horn supports the finding that the attorney-client relationship between Hiltz and Horn was not a continuing relationship from 1983 through 1990.

We are not convinced that Horn's services amounted to a continuing relationship. The URESA representation activities were severable from those of Horn's previous representation of Hiltz, and, consequently, even the continuous representation doctrine could not save Hiltz's claims from the statute of limitations bar.

### C. Concealment or Failure to Disclose Material Facts

■ Hiltz argues that a dispute existed as to whether Horn concealed or failed to disclose material facts which would have given rise to an issue of whether Hiltz knew or

should have known of a cause of action against Horn. He did not present this issue to the district court but raised it for the first time in this appeal. We will not consider issues which are raised for the first time on appeal. *Stuckey v. State ex rel. Wyoming Worker's Compensation Division*, 890 P.2d 1097, 1100 (Wyo.1995). We, therefore, decline to address this issue.

## CONCLUSION

We hold that the statute of limitations had run on Hiltz's claims against the appellees and that, therefore, summary judgment was appropriate.

Affirmed.