**Delphine Badura MURPHY and Elmarie Denney, Co–Personal Representatives of the Estate of Dominic G. Badura, Appellants (Plaintiffs),**

v.

**HOUSEL & HOUSEL; Jerry W. Housel and John O. Housel, Appellees (Defendants).**

**No. 96–313.**

Supreme Court of Wyoming.

March 12, 1998.

Rehearing Denied April 7, 1998.

Don W. Riske of Riske & Arnold, P.C., Cheyenne, for Appellants (Plaintiffs).

Lawrence B. Cozzens of Crowley, Haughey, Hanson, Toole & Dietrich, P.L.L.P., Billings, for Appellees (Defendants).

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN JJ.

THOMAS, Justice.

The only issue to be resolved in this case is whether the trial court ruled correctly when it granted a summary judgment to Housel & Housel, Jerry W. Housel and John O. Housel (the Housels), on the premise that the statute of limitations for attorney malpractice had run at the time the action was filed. In ruling against Delphine Badura Murphy and Elmarie Denney, the successor co-personal representatives of the Estate of Dominic G. Badura (the personal representative), the trial court concluded that there was no genuine issue of fact as to when a successor attorney became aware of the alleged claim for malpractice nor the attribution of that knowledge to the personal representative. The trial court held, as a matter of law, that the statute of limitations had expired prior to the filing of this action, and its Order Granting Defendants' Motion for Reconsideration of Motion for Summary Judgment and Granting Summary Judgment was entered on October 7, 1996. We affirm the trial court.

In the Brief of Appellant, filed on behalf of the personal representative, the stated issues are:

1. Whether the District Court erred in ruling that the knowledge of Diane Walsh was imputed to the Appellant for purposes of applying the statute of limitations.

2. Whether the knowledge of Diane Walsh imputed to the Appellant was within the scope of her representation of the estate.

3. Whether the Appellees are able to claim the benefit of the imputation rule.

4. Whether material factual questions regarding the knowledge of Diane Walsh imputed to the Appellant sufficient to preclude Summary Judgment exist in this record.

Only one issue is stated in the Brief of Appellees, filed on behalf of the Housels:

The sole issue presented by this appeal is whether the trial court erred in granting summary judgment in favor of the Appellees (hereinafter referred to as the "Housels") based upon the determination that the case was barred by the two year statute of limitations set forth in Wyo. Stat. § 1–3–107.[1]

█ In this instance a rather detailed recitation of the facts in a chronological context is helpful in understanding the resolution of the issues. Dominic G. Badura died testate on January 5, 1985. Dominic Badura's brothers, Robert B. Badura and John A. Badura, and his sister, Joan S. Badura, were appointed and served as co-personal representatives of the Estate of Dominic G. Badura (the estate). In February of 1985, Robert Badura retained the Housels' law firm to provide legal services in connection with the probate of the estate. On August 26, 1986, Robert Badura executed the Estate Inventory that listed "all assets in which decedent [Dominic G. Badura] had an interest subject to probate[.]" The appraisal of the assets of the estate demonstrated a value for the estate of $371,252.38. In May of 1987, a Final

---

1. In addition to this statement of the issue, the Housels articulate a series of arguments in their brief, which they contend serve to justify the trial court's decision:

A. The Standard of Review for Summary Judgments.

B. The Trial Court Correctly Determined that the Knowledge of Diane Walsh, as the Attorney for the Estate, Was Imputable to the Estate and Triggered the Statute of Limitations More than Two Years Prior to the Commencement of this Action on October 19, 1995.

  1. Attorney Walsh had a duty to disclose to the Estate her knowledge concerning the malpractice claims that are asserted against the Housels in this case, and therefore that knowledge is imputed to the Es-

tate for purposes of triggering the statute of limitations.

  2. There is no basis in law or fact to support the contention that the Housels are estopped or otherwise ineligible to "claim the benefit of the imputation rule."

  3. The Estate has failed to disclose any genuine issue of material fact concerning the knowledge of Diane Walsh that would preclude summary judgment in favor of the Housels.

C. Even if for Some Reason the Knowledge of Diane Walsh Cannot be Imputed to the Estate, This Court Should Affirm Summary Judgment in Favor of the Housels Based Upon the Knowledge of the Estate's Personal Representative, Robert Badura.

Report and Accounting and Petition for Distribution was filed, which stated that the value of the assets in the estate was $390,737.00. The Housels submitted a report to the Wyoming Inheritance Tax Commissioner stating that neither federal estate taxes nor Wyoming Inheritance Taxes were due because the value of the estate was less than $500,000.00.

At the time of his death, Dominic G. Badura was a partner in a Wyoming partnership known as Badura Brothers in which the other partners were Robert B. Badura and John A. Badura. In the fall of 1987, it became apparent that the original inventory of the estate had not included his interest in some of the assets of the partnership. This resulted in Robert Badura filing a Supplement to Estate Inventory that added assets to the estate having a value of $85,050.00. On January 18, 1988, Donna Sears, an attorney who worked for the Housels, prepared and Robert Badura executed the second Final Report and Accounting and Petition for Distribution, which listed the total assets of the estate as having a value of $475,789.00. Although the value of the estate now exceeded the $400,000.00 federal estate tax exemption, neither a federal estate tax return nor a Wyoming state inheritance tax return was filed, and no taxes were paid.

About a year and a half later, on July 13, 1989, Jerry Housel entered into an agreement with another attorney, Diane Walsh, pursuant to which Walsh agreed to provide legal services to some of Jerry Housel's clients, acting as co-counsel, and one of those clients was the Estate of John A. Badura. While she was working on the estate, Diane Walsh discovered additional assets in the Badura Brother's Partnership, including a certificate of deposit valued at $834,200.32, that had been omitted from the inventory of the Estate of Dominic G. Badura. On May 6, 1991, Diane Walsh advised Jerry Housel of the existence of the additional assets and of the requirement that a federal estate tax return be filed for the Estate of Dominic G. Badura.

In September of 1991, a meeting with respect to the estate was held in which Jerry Housel, John Housel, Diane Walsh and Rob-

ert Badura participated. It was agreed at the meeting that Diane Walsh would serve as the attorney for the estate with respect to all matters arising from the failure to file a federal estate tax return and payment of the taxes owed by the estate. At a subsequent point in the meeting, Diane Walsh explained to Robert Badura the necessity for reopening the estate in order to file a federal estate tax return, pay the taxes and interest on taxes past due, and pay any penalties that the Internal Revenue Service might assess. There also occurred a discussion about whether the estate should assert a claim for legal malpractice against the other attorney who had worked for the Housels and had been involved in the failure to file a federal estate tax return for the estate. At that time, Robert Badura indicated that he did not want to assert a claim against the other attorney for malpractice.

After the September 1991 meeting, Diane Walsh served as the only attorney performing any services in connection with the estate. In June of 1993, she prepared and Robert Badura executed the Petition to Reopen Estate. After that, a Supplemental Estate Inventory was filed which increased the assets of the estate in the amount of $341,801.36. In February of 1995, a federal estate tax return was filed which showed a federal estate tax assessment of $108,816.30 and a Wyoming Inheritance Tax of $20,781.24. On April 17, 1995, the Internal Revenue Service sent a Request for Payment in the amount of $51,687.75 in penalties and $193,634.68 in interest to the estate.

On October 19, 1995, Robert B. Badura, as personal representative of the estate, filed this Complaint against the Housels asserting a right to recover for legal malpractice. The Housels filed a motion for summary judgment asserting that the action was not timely, but the district court denied that motion on May 15, 1996, ruling that a genuine issue of material fact was present as to when Robert Badura either knew or should have known of the cause of action against the Housels. Thereafter, Delphine Badura Murphy and Elmarie Denney were appointed as successor co-personal representatives of the estate on September 11, 1996, and they were

substituted as parties. The Housels filed a Motion for Reconsideration of Motion for Summary Judgment, again asserting that there was no genuine issue of material fact as to when Diane Walsh acquired knowledge of the cause of action against the Housels and that an attorney-client relationship had been formed between Diane Walsh and Robert Badura pursuant to which her knowledge of the cause of action was imputed to Robert Badura. The Housels asserted that these events antedated the complaint for legal malpractice by more than two years, and on October 7, 1996, the district court granted the Motion for Reconsideration of Motion for Summary Judgment.

█ Summary judgment is appropriate when no genuine issue of material fact is present and the prevailing party is entitled to judgment as a matter of law. *Hermreck v. United Parcel Service, Inc.*, 938 P.2d 863 (Wyo.1997); *Woodard v. Cook Ford Sales, Inc.*, 927 P.2d 1168, 1169 (Wyo.1996). *See also*, W.R.C.P. 56(c). The record must be examined from the view most favorable to the party opposing the motion, and that party must be given the benefit of all favorable inferences which may be fairly drawn from the record. *Duncan v. Town of Jackson*, 903 P.2d 548, 551 (Wyo.1995); *Reno Livestock Corp. v. Sun Oil Co. (Delaware)*, 638 P.2d 147, 150 (Wyo.1981), *followed in, Nowotny v. L & B Contract Industries, Inc.*, 933 P.2d 452, 455 (Wyo.1997). We make an independent examination of the record for genuine issues of material fact and review a summary judgment without according deference to the decision of the district court on any issues of law. *Woodard*, 927 P.2d at 1169; *Davidson v. Sherman*, 848 P.2d 1341, 1343 (Wyo.1993).

█ The pertinent statute of limitations is WYO. STAT. § 1–3–107 (1988):

(a) A cause of action arising from an act, error or omission in the rendering of licensed or certified professional or health care services shall be brought within the greater of the following times:

(i) Within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after discovery of the alleged act, error or omission,

if the claimant can establish that the alleged act, error or omission was:

(A) Not reasonably discoverable within a two (2) year period; or

(B) The claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence.

This statute applies to claims against an attorney for legal malpractice. *Hiltz v. Robert W. Horn, P.C.*, 910 P.2d 566, 569 (Wyo.1996); *Boller v. Western Law Associates, P.C.*, 828 P.2d 1184, 1185 (Wyo.1992). In Wyoming, the statute of limitations is triggered when the plaintiff knows or has reason to know of the existence of a cause of action. *Barlage v. Key Bank of Wyoming*, 892 P.2d 124, 126 (Wyo.1995). *See also, Duke v. Housen*, 589 P.2d 334 (Wyo.1979), *reh'g denied*, 590 P.2d 1340 (Wyo.1979), *cert. denied*, 444 U.S. 863, 100 S.Ct. 132, 62 L.Ed.2d 86 (1979). We describe this doctrine as the discovery rule.

█ Ordinarily, entry of a summary judgment on the issue of when the statute of limitations commences to run would be inappropriate. *Hiltz*, 910 P.2d at 569. If, however, uncontroverted facts exist that demonstrate with specificity the time when a reasonable person would have been placed on notice, we will resolve the question as a matter of law. *Hiltz*, 910 P.2d at 569; *Bredthauer v. Christian, Spring, Seilbach and Associates*, 824 P.2d 560, 562 (Wyo. 1992).

█ As these concepts are applied in this case, uncontroverted facts establish that at the meeting in September of 1991 involving Jerry Housel, John Housel, Diane Walsh and Robert Badura, an agreement was formed to the effect that Diane Walsh would act as attorney for the estate on all matters arising from the failure to file a federal tax return and payment of taxes owed by that estate. The attorney-client relationship between Diane Walsh and the estate, which was established in September of 1991, invoked principles of agency law, pursuant to which knowledge of an attorney is imputed to the client. This proposition is stated in *Stricker v. Frauendienst*, 669 P.2d 520, 522 (Wyo.1983) (emphasis added):

" 'Whenever * * * a regularly admitted attorney appears for a party in a cause, the presumption is that such appearance is authorized.' " *Heyer v. Hines*, 36 Wyo. 53, 252 P. 1028, 1029 (1927).

"**The attorney's knowledge is deemed to be the client's knowledge when the attorney acts on his behalf** * * * [O]nce a party has designated an attorney to represent him in regard to a particular matter, the court and the other parties to an action are entitled to rely upon that authority until the client's decision to terminate it has been brought to their attention * * *." *Haller v. Wallis*, 89 Wash.2d 539, 573 P.2d 1302, 1307 (1978).

There also is no controversy about the fact that at this meeting, Diane Walsh advised Robert Badura of the necessity to reopen the estate in order to file the tax returns, pay taxes and interest on taxes past due, and pay the penalties which the Internal Revenue Service could assess. At that meeting Robert Badura was advised of a potential claim for legal malpractice against the other attorney who had worked on the estate, but Robert Badura indicated he did not want to assert a claim for legal malpractice against that attorney.

Even if we were to assume that these facts did not lead to an ineluctable conclusion that Robert Badura knew or had reason to know of the existence of a potential cause of action for legal malpractice, there can be no question that his attorney, Diane Walsh, had sufficient facts available to her to be aware of the potential of a legal malpractice action. Under our rules of law, that knowledge was chargeable to Robert Badura. Since Robert Badura, by virtue of the knowledge of his attorney, if not his own, knew or had reason to know of the cause of action in September of 1991, and the estate did not file the claim for legal malpractice until October 1995, the suit was time barred pursuant to the provisions of WYO. STAT. § 1-3-107.

We acknowledge *Mills v. Garlow*, 768 P.2d 554, 558 (Wyo.1989), in which we held that the statute of limitations in a malpractice action against an accountant involving increased tax liability would not begin to run until the tax payer received the statutory notice of deficiency. That case is distinguishable from this case, however, because there the issue as to whether or not a tax liability was present remained debatable until the statutory notice of deficiency was sent. It was not until that time that the plaintiff became aware of a potential cause of action for malpractice relating to the issue of tax liability. In this case, it is apparent that both Diane Walsh and Robert Badura were aware, at least by the September 1991 meeting, that the estate would be subject to the payment of interest on taxes and potential penalties, and the statute of limitations for the claim of attorney malpractice began to run at that time.

The Order Granting Defendant's Motion for Reconsideration of Motion for Summary Judgment and Granting Summary Judgment is affirmed.