Artese v Pollack (2004 NY Slip Op 50201(U))

[*1]

Artese v Pollack

2004 NY Slip Op 50201(U)

Decided on April 2, 2004

Supreme Court, Nassau County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 2, 2004

Supreme Court, Nassau County
 THOMAS ARTESE, Deceased, by DEBORAH ARTESE, as Administratrix of his Estate, and DEBORAH ARTESE, Individually, Plaintiff(s),
against
DAVID S. POLLACK, ESQ., Defendant.
INDEX No. 10364/03

Geoffrey J. O'Connell, J.
In this action Plaintiff seeks damages from her former attorney claiming he committed legal malpractice and professional negligence. Defendant was the attorney who brought a medical malpractice wrongful death action because of the death of THOMAS ARTESE on July 31, 1998. Plaintiff claims that the defendant committed malpractice in resigning as her attorney without notifying her of a potential claim against the hospital which had discharged her husband or of the looming expiration of the Statute of Limitations for the bringing of such a suit.
Defendant seeks a dismissal of the Complaint as time barred pursuant to CPLR § 3211(a)(5) or for failure to state a valid claim for legal malpractice pursuant CPLR §§ 3211(a)(7) and 3212.
Factual Setting
On August 7, 1998 Plaintiff Deborah Artese retained Defendant David Pollack to represent her in connection with her husband's recent death. The Verified Complaint in the underlying wrongful death medical malpractice action is dated Apr. 30, 1999 and is based upon the release of Thomas Artese from Staten Island Hospital on July 30, 1998 and his death the following day. Dr. Jerzy Macura had performed stomach stapling surgery on the decedent during his hospitalization
 Defendant Pollack avers that Plaintiff informed him that her husband was released from the hospital on instructions from Dr. Macura despite a 102.3 degree temperature and that, on the [*2]following day, when she advised Dr. Macura that her husband was sweating and having difficulty breathing, Dr. Macura refused to readmit him to the hospital. A bill of particulars served in the wrongful death action alleged, inter alia, that Dr. Macura caused the decedent's discharge despite his fever, discounted the decedent's complaints of fever, pain and shortness of breath, and failed to recommend immediate rehospitalization. Although verified by counsel pursuant to CPLR § 3020(d)(3), Plaintiff does not deny Defendant's assertion that this was the version of the facts she imparted to him. Plaintiff was deposed in February of 2000 at which time, according to Defendant, she testified that Dr. Macura in fact advised the decedent to return to the hospital, but he refused. Although neither party has provided the Court with a copy of this transcript, Plaintiff does not contest this synopsis of her testimony.
Dr. Jerzy Macura was deposed by Defendant on April 14, 2000. The excerpts of that deposition supplied Plaintiff indicate that after Dr. Macura had ordered Mr. Artese discharged, but before he was actually discharged, the patient's temperature spiked to 102.3 degrees. A first-year surgical resident, Dr. Graham was notified and he saw the patient. According to Dr. Macura's deposition, after unsuccessfully attempting to contact Dr. Macura, Dr. Graham was advised by a senior resident, Dr. Atanosov, that he could discharge Mr. Artese. Dr. Macura testified that it would be a departure from the standards of good and accepted practice to discharge a patient such as Mr. Artese whose temperature had recently spiked to 102.3 degrees. A note in Dr. Macura's office record, which was read into the record at his deposition, indicates that, upon learning that Mr. Artese had been discharged despite the fever spike, Dr. Macura called the Arteses and arranged for them to meet him at the emergency room of Maimonides Hospital. Dr. Macura testified that he waited at the emergency room for two hours, but the Arteses never arrived. He again called them and begged both the decedent and his wife to come to the hospital, but Mr. Artese refused. Dr. Macura testified that he called
several more times and told the patient that his condition could be life threatening, but the patient still refused to reenter the hospital.
Ten days after Dr. Macura's deposition, Defendant POLLOCK sent a letter to Plaintiff DEBORAH ARTESE confirming a telephone conversation of April 18, 2000. In this letter Defendant stated that he was "unwilling to continue the prosecution of [Plaintiff's] medical malpractice case." The reason given by Defendant for this unwillingness was:

"Assuming that we could successfully prove negligence on the part of either Dr. Macura or the hospital for sending your husband home with a fever, the fact that your husband failed to seek medical treatment the day after his discharge, contrary to the doctor's advice, would almost certainly result in a finding of no causal connection between the negligence and his death. Even if we were able to establish causal connection, I believe a jury would count comparative fault against your husband so heavily that it would preclude any meaningful recovery and possibly even prevent a finding of negligence.(emphasis supplied)"
Defendant recommended that the lawsuit be discontinued. Further he stated that, should Plaintiff decide to pursue it, she would need to retain another attorney. Defendant added that, if Plaintiff [*3]failed to retain another attorney, he be forced to seek a court order relieving him.
Defendant POLLACK never spoke to the plaintiff after their April 18, 2000 conversation. Plaintiff signed a letter dated May 4, 2000 (Defendant's Exhibit "E") authorizing Defendant to show her litigation file the law firm of Julien & Schlesinger, but the letter was not presented until January of 2001. Sometime thereafter Julien & Schlesinger took over the case. On July 5, 2000, defendant prepared a motion to be relieved as plaintiff's attorney which Defendant acknowledges receiving in July of 2000. The two year Statute of Limitations on wrongful death actions expired on July 31, 2000. (Estates, Powers & Trusts Law § 5-4.1(1)) Defendant's application to be relieved was granted without opposition by order dated Sept. 14, 2000. The action against Dr. Macura was ultimately settled for $350,000.00.
Statute of Limitations
The Statute of Limitations for a legal malpractice is three years. (CPLR 214(6)). This action was commenced on July 2, 2003 when the Complaint was filed. (CPLR § 203(c)). Accordingly, any claim for legal malpractice which accrued prior to July 2, 2000 would be barred. Defendant argues that Plaintiff's claim for legal malpractice accrued in April of 2000 when he stated his unwillingness to pursue the lawsuit. Plaintiff
contends that the cause of action accrued on July 31, 2000 when the Statute of Limitations expired. Defendant contends that the attorney-client relationship ended with his letter of April 24, 2000.
A cause of action for legal malpractice accrues when the malpractice is committed no matter when the client discovers it. Shumsky v Eisenstein, 96 NY2d 164, 166 (2001). However, the cause of action does not come into existence until all the facts necessary to secure relief, including injury, are present. McCoy v Feinman, 99 NY2d 295, 301 (2002); Ackerman v Price Waterhouse, 84 NY2d 535, 541 (2001). In the context of certain professions like medicine the coincidence of the malpractice and the injury is usually obvious. With other professions there may be an issue as to what injury gave rise to the cause of action for malpractice. In Ackerman v Price Waterhouse (84 NY2d 535, 541 (1994)) the Plaintiff claimed that the cause of action for accountant malpractice accrued when Internal Revenue Service assessed deficiencies for tax returns which the defendant had prepared. The Court of Appeals held, however, that the cause of action accrued when the client received the accountant's work product. It reasoned that all of the facts necessary to the cause of action existed at that date even if the client was unaware of the malpractice or that she had been injured. In McCoy v Feinman (99 NY2d 295 (2002)) the wife's attorney failed to assert a claim for preretirement death benefits and no such provision was included in the stipulation settling the action for divorce. When the former husband died prior to retirement, the former wife was denied any share in the death benefit. The Court of Appeals found that the cause of action accrued on the day of the stipulation or, at the latest, the date on which the judgment incorporating the stipulation was filed saying, "we find no reason that plaintiff's damages were not then sufficiently calculable to permit plaintiff to obtain prompt [*4]judicial redress." (Id. at 305).
Here, there was no ascertainable injury and therefore no cause of action prior to the expiration of the statute of limitations on July 31, 2000. See, Shumsky v Eisenstein, 96 NY2d 164, 166 (2001).
Summary Judgment
Plaintiff contends that Defendant departed from the standards of good and accepted practice for a lawyer in failing to sue Staten Island Hospital and Dr. Graham after the deposition of Dr. Macura on April 14, 2000 and before July 31, 2000 when the Statute of Limitations expired. Certainly, Defendant cannot be faulted for crediting his client's version of the facts under which Dr. Macura had discharged the decedent and ignored his patient's subsequent complaints. On the day of Dr. Macura's deposition approximately 105 days remained during which an action against the hospital and Dr. Graham could be timely commenced.
An attorney cannot be cast in damages for negligently failing to sue on a claim where successor counsel had an opportunity to bring the suit in timely fashion. Golden v Cascione, Chechanover & Purcigliotti, 286 AD2d 281 (1st Dept, 2001). The opportunity which relieves the former counsel from liability for malpractice may arise from the fact that, when former counsel's representation ended, the Statute of Limitations had not expired (Greenwich v Markoff, 234 AD2d 112 [1st Dept, 1996]). This is true even if as little as thirty days remain before the action would be time barred (Shertov v Capoccia, 161 AD2d 871 [3d Dept, 1990]). A statutory opportunity afforded successor counsel to revive a dismissed claim despite expiration of the Statute of Limitations also precludes a malpractice action against original counsel. Kozmol v Rothenberg, 241 AD2d 484 (2d Dept, 1997).
Defendant contends that his representation of Plaintiff ceased with his letter of April 24, 2000 after which there was no further contact with Plaintiff. Plaintiff argues that Defendant's representation continued until the order relieving him dated Sept. 14, 2000. The question whether a formal substitution is required to end the attorney-client relationship also arises in the context of the "continuous representation" doctrine, the equivalent in the legal malpractice sphere to the "continuous treatment" doctrine in medical malpractice. The tolling of the Statute of Limitations for continuous representation does not turn on the formalities surrounding the relationship, but rather upon the existence of "clear indicia of an ongoing, continuous, developing, and dependent relationship between the client and the attorney often involving an attempt by the attorney to rectify an alleged act of malpractice" Muller v. Sturman, 79 AD2d 482, 485 (4th Dept, 1981). Since the application of the continuous representation doctrine is premised on a continuing relationship of trust and confidence, it is inapplicable where no such relationship exists. Pitelli v Schulman, 128 AD2d 600 (2d Dept, 1987); see, Coyne v. Bersani, 61 NY2d 939 (1984). Continuous representation terminates when it becomes manifest that the client has ceased to repose trust and confidence in the attorney even if the attorney's withdrawal as counsel has not been formally sanctioned and no other attorney undertakes the representation. Aaron v Roemer, [*5]Wallens & Mineaux, 272 AD2d 752 (3d Dept, 2000).
In the present case, whether one accepts the Defendant's version of the facts or that of the Plaintiff, there was no longer a relationship of trust and confidence after Defendant's letter of April 24, 2000. Plaintiff avers that she was unaware that Staten Island Hospital and Dr. Graham had not been sued despite the fact that she verified the complaint in the wrongful death action and it neither names nor mentions the Hospital or Dr.
Graham. Plaintiff acknowledges that in a telephone conversation of April 18, 2000, after "he blamed my husbands (sic) death as his own responsibility," Defendant stated, "that he felt unwilling to further prosecute my case based upon my deposition and that of Dr. Macura." Plaintiff admits that Defendant told her
that if she wished to pursue the case she "should begin to look for another attorney" whereupon she stated that wanted to continue the action. In his letter of April 24, 2000 Defendant wrote; "In the event you decide that you wish to continue the lawsuit, you must retain another attorney to do so." Ten days later Plaintiff did in fact consult another attorney, Julien & Schlesinger, and she authorized the new attorney to review Defendant's file. During that consultation the date of Thomas Artese's death had to have been discussed. Finally, Plaintiff acknowledges receiving Defendant's notice of motion requesting that he be relieved in July of 2000 after which any notion that Defendant was still representing her could only be pure fantasy.
Conclusion
The Court finds that upon the uncontested facts of this case that Defendant promptly notified Plaintiff of his intention to withdraw as counsel upon learning that the circumstances surrounding the death of Thomas Artese were other than as Plaintiff had represented them to be. Defendant then promptly, formally and unequivocally notified Plaintiff that he would no longer pursue the lawsuit prior to the expiration of the Statute of Limitations. Plaintiff was advised to and did in fact consult potential successor counsel prior to the running of the Statute. Under such circumstances Defendant cannot be held liable for any damages resulting from the failure to sue Staten Island Hospital or Dr. Graham because Plaintiff had sufficient opportunity to consult and retain new counsel and commence an action prior to expiration of the limitation period.
The Complaint is dismissed
It is, SO ORDERED.
 HON. GEOFFREY J. O'CONNELL, J.S.C.
Decision Date: April 02, 2004